1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

MEE YANG,                                    )   1:09cv0790 DLB
                                             )
                                             )
                    Plaintiff,               )   ORDER REGARDING PLAINTIFF'S
                                             )   SOCIAL SECURITY COMPLAINT
        v.                                   )
                                             )
MICHAEL J. ASTRUE, Commissioner              )
of Social Security,                          )
                                             )
                                             )
                    Defendant.               )
_____ )

## BACKGROUND

        Plaintiff Mee Yang ("Plaintiff") seeks judicial review of a final decision of the

Commissioner of Social Security ("Commissioner") denying her application for supplemental

security income pursuant to Title XVI of the Social Security Act.  The matter is currently before

the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable

Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

        Plaintiff filed her application on March 31, 2006, alleging disability since January 1,

2002, due to depression, a weak right hand and pain in her abdomen, knees and back.  AR 123-

129, 133-139.  After Plaintiff's application was denied initially and on reconsideration, she

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

requested a hearing before an Administrative Law Judge ("ALJ").  AR 83-86, 87-91, 94.  On March 13, 2008, ALJ Christopher Larsen held a hearing.  AR 24-47.  He denied benefits on May 30, 2008.  AR 9-20.  The Appeals Council denied review on January 28, 2009.  AR 5-8.

Plaintiff filed a previous application for social security benefits that was denied by hearing decision dated August 16, 2004.  AR 12.

Hearing Testimony

ALJ Larsen held a hearing on March 13, 2008, in Fresno, California.  Plaintiff appeared with her attorney, Melissa Proudian.  Vocational expert ("VE") Judith Najarian also appeared and testified.  Plaintiff was assisted by a Hmong interpreter.  AR 24.

Plaintiff testified that she was 42 years old at the time of the hearing.  She is married and has 12 children.  Seven of the children live at home.  AR 29-30.  Plaintiff has a driver's license and drives once or twice a month.  She did not complete school but attended some adult education classes when she moved to Merced.  She cannot read or write English.  AR 31-32.

Plaintiff last worked in 2001 as a part-time cook.  AR 32-33.  Prior to that, she worked part-time sewing shirts.  AR 33.  Plaintiff did not think she could work full time because of back pain and stomach pain "from delivering twelve children, aborted three and two operations, emergencies."  AR 34.  She also has pain all over her body and is constantly on medication.  Plaintiff further testified that she is very depressed and explained that her husband is having an affair and that none of her children have tried to accomplish anything.  AR 34.

Plaintiff testified that her low back pain is constant and that she cannot even bend down to wash her hair.  She has treated her back with "massage and some ointment."  AR 34.  Medication numbs the pain, but when it wears off, the pain is still there.  The pain radiates down her leg and up to her shoulder.  AR 36.  She cannot lift things, sweep the floor or squat down.  AR 35.  Plaintiff thought that she could sit for 30 minutes, walk for 30 minutes and walk about one block.  She could lift about two gallons of milk.  AR 35-36.  Plaintiff believed that her back pain had gotten much worse since the 2004 hearing and she now cannot go to sleep or lay down.  During the day, she lays down on the sofa and watches television.  AR 36.  She does this at least five times a day, for about an hour each time.  AR 36.

Plaintiff further explained that she feels depressed about twice a day, for at least an hour a time. Pain, stress and anger keep her from doing anything. Nothing can make her feel better when she is depressed, though she does sometimes go outside for fresh air. She thinks a lot about hurting herself when she is depressed, but doesn't want her children to grow up without parents. She has never tried to kill herself. AR 37. Her depression has worsened since the 2004 hearing. AR 40.

When she is depressed, she cannot concentrate. Plaintiff estimated that she could concentrate for about 20 minutes before needing a break of about 30 minutes. AR 38.

Plaintiff also has problems with her right hand. She described pain from the shoulder down to her wrist and numbness in her right arm. Her right hand and arm are always like this, and worsen when she sleeps. She cannot hold a knife to cut meat with her right hand and she does not cook. She helps out with cleaning by sweeping the floor a little and washing a couple of dishes. She can also put the laundry into the machine. AR 39. Plaintiff goes shopping with her children to help them "pick the right stuff." AR 40.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and experience. This person could lift and carry 50 pounds occasionally, 25 pounds frequently, stand and walk for six hours and sit for six hours. This person could occasionally stoop, crouch and crawl, and can understand, remember and carry out simple one or two step instructions. The VE testified that this person could perform the medium positions of bag loader, cleaner and poultry hanger. The medium positions were reduced 90 percent to reflect an SVP level of 1. AR 42-43.

For the second hypothetical, the ALJ asked the VE to assume the same limitations, except that this person could lift 20 pounds occasionally, 10 pounds frequently. The VE testified that this person could perform the positions of fruit cutter, bottle line worker, or steamer. AR 49.

For the last hypothetical, the ALJ asked the VE to assume that this person could not maintain attention or concentration consistently throughout an eight hour day. The VE testified that this person could not work. AR 44.

3

Medical Record[2]

On May 17, 2005, Plaintiff began treating with Health and Human Services.  She complained of lack of support from her spouse, out of control children, inadequate finances, preoccupation with lower back pain, pain in her right arm and abdomen, migraines, a poor appetite and difficulty sleeping.  On mental status examination, Plaintiff was depressed and had a sad affect.  She maintained minimal eye contact.  Plaintiff's short term memory was fair but her long term memory was inadequate.  Plaintiff reported suicidal thoughts in the past but never attempted suicide.  She is able to care for herself and tries to help cook once or twice a week.  Plaintiff was diagnosed with major depressive disorder, moderate.  Individual therapy, group rehabilitation, case management and family intervention were recommended.  AR 196-201.

On September 30, 2005, Chue Wang Xiong, MHCMS, wrote a letter indicating that Plaintiff began treatment with Health and Human Services for depression in May 2005.  He noted that Plaintiff's mental health problems have significantly impaired her ability to cook and clean, to relate to other family members and to learn new information.  Plaintiff is tearful, preoccupied with her family problems and has little or no interest in daily living.  Mr. Xiong opined that it was unlikely that Plaintiff could recover from her chronic mental health problems in the next two years.  AR 195.

Plaintiff saw Veng Leng Mouanoutoua, Ph.D., on October 4, 2005.  Plaintiff appeared depressed and stressed out and was slow to respond.  She complained of depression, crying spells, low stress tolerance, anger outbursts, poor concentration, hopelessness and suicidal ideations.  These symptoms have prevented her from cooking and caring for her family.  On mental status examination, Plaintiff appeared uptight, guarded, depressed and withdrawn.  She was tearful when talking about her three "out of control" children.  Plaintiff was oriented to person and place only.  Dr. Mouanoutoua noted that Plaintiff's intellectual functioning has been significantly impaired because of her poor short term memory, difficulty concentrating, failure to follow complex instructions, preoccupation with her distress, hopelessness and suicidal wishes.

---

[2] Plaintiff's sole argument is related to her mental health treatment and the summary of the record is therefore limited accordingly.

Plaintiff demonstrated emotional withdrawal and isolation.  She reported performing simple tasks at home, though she sometimes needed reminding from her spouse.  She also reported that she avoids overcrowded or noisy places because they trigger distress, agitation and headaches. Plaintiff further reported that she becomes tearful or angry when she feels overwhelmed, though she understands simple oral instructions with encouragement.  AR 206-210.

Plaintiff was taking lorazepem and Effexor and reported having "less worries and better days" with the medications.  Dr. Mouanoutoua diagnosed major depressive disorder, severe.  He opined that given Plaintiff's level of excessive stress and depression, she is unlikely to adapt to work-related stress.  It was also very unlikely that her condition would improve.  He opined that her ability to understand and remember very short and simple instructions was fair, and her ability to understand and remember detailed or complex instructions was poor.  Her ability to carry out instructions, concentrate and work without supervision was poor.  Plaintiff's ability to adapt to changes in the workplace, be aware of normal hazards and react appropriately and use public transportation was also poor.  Plaintiff could not manage her funds in her own best interest.  AR 209-212.

On May 8, 2006, Dr. Mouanoutoua examined Plaintiff and noted that her appearance was disheveled and she demonstrated poor hygiene.  Her motor activity was slow and she was irritable.  Her concentration and immediate and recent memory were moderately impaired.  Her intelligence was average when compared to other Asian adults.  Plaintiff's mood was anxious, depressed and fearful and her affect was constricted.  Her judgment was moderately impaired and she was preoccupied with stomach, low back and knee pain, as well as headaches.  AR 203-204.

Dr. Mouanoutoua opined that Plaintiff's ability to understand, remember and carry out complex instructions was poor, as was her ability to perform activities within a schedule, complete a normal workday or week without interruption of psychological symptoms and respond appropriately in a work setting.  Plaintiff's ability to understand, remember and carry out simple tasks and her ability to maintain concentration, persistence and pace was fair.  AR 205.

On June 17, 2006, State Agency physician M.O. Nawar completed a Physical Residual

Functional Capacity Assessment form.  Dr. Nawar opined that Plaintiff could lift 50 pounds occasionally, 25 pounds frequently, stand and/or walk for six hours and sit for six hours.  She had no further limitations.  AR 215-219.

On June 28, 2006, State Agency physician R.Y. Hood, M.D., completed a Mental Residual Functional Capacity ("RFC") Assessment form.  Dr. Hood opined that Plaintiff was not significantly limited in any area of functioning.  He opined that Plaintiff could understand and remember simple tasks for two hour increments, maintain simple tasks for a 40 hour workweek and adapt to usual work-place changes.  Dr. Hood noted that the RFC assessment was "meant to be a transduction" of the prior ALJ's finding, as there appeared to be no material change in circumstances since that decision.  AR 220-222.

Dr. Hood also completed a Psychiatric Review Technique Form.  He again determined that Plaintiff was not significantly limited in any area.  She could understand and remember simple tasks for two hour increments, maintain simple tasks for a 40 hour workweek and adapt to usual work-place changes.  AR 223-233.

On August 4, 2006, Plaintiff saw Ge Thao, a social worker from Hmong Women's Family Focus.  On examination, Plaintiff was depressed, with impaired memory and judgment. Her speech and thought process were slow.  Plaintiff was diagnosed with major depressive disorder, single episode, moderate.  AR 237-238.

On March 13, 2007, State Agency physician L. Bobba, M.D., affirmed the June 17, 2006, physical RFC finding.  AR 262.

On July 2, 2007, Plaintiff was seen at Mercy Medical Center Family Care for back and knee pain.  Her depression was listed as stable and her medications were refilled.  AR 286.

Plaintiff saw Mr. Thao on August 23, 2007.  After 12 months of services, Plaintiff had learned how to reduce the intensity of some symptoms with coping skills and medication. However, Plaintiff then stated that her depression and worry had worsened.  She was able to cook small meals with supervision, maintain activities of daily living and drive short distances.  Her mental condition was a result of her daily struggle with her family situation.  On mental status examination, she was depressed though her memory and judgment were intact.  Speech was

normal and she was oriented in three spheres.  Her thought process was slow and reserved.  Mr. Thao diagnosed major depressive disorder, severe, without mention of psychotic features.  AR 269- 271.

On February 7, 2008, Plaintiff was seen at Mercy Medical Center Family Care for complaints of back pain and depression.  She reported that Effexor was helping with the depression.  Her depression was listed as stable and her medication was refilled.  AR 284.

On February 28, 2008, Mr. Thao provided a letter to Plaintiff's attorney.  He explained that Plaintiff began treatment in August 2006 for depressive symptoms, including hopelessness, excessive worries, suicidal ideation and functional impairments.  She has received both individual and group therapy.  Mr. Thao believed that Plaintiff's symptoms were still severe and caused daily functional impairments.  As a result, she cannot manage self-care.  AR 267.

On March 29, 2008, Dr. Mouanoutoua completed a psychiatric Medical Source Statement.  Her ability to relate and interact with co-workers and supervisors was very poor. Plaintiff could not understand, remember and carry out detailed instructions, deal with the public, maintain concentration and attention for two hour increments or withstand the stress and pressures of a normal workday or workweek.  Plaintiff's ability to understand, remember and carry out simple instructions was limited because she needs reminders and encouragement.  Dr. Mouanoutoua believed that her prognosis was poor due to the poor response to medication and mental health services. AR 290-291.

ALJ's Findings

Initially, the ALJ explained that Plaintiff filed a prior application that was denied by a hearing decision dated August 16, 2004.  There, ALJ Birge determined that Plaintiff retained the RFC to perform medium work and one and two step job instructions.  AR 12, 58.  Based on his review of the record, the ALJ concluded that Plaintiff had not demonstrated changed circumstances to rebut the presumption of continuing non-disability.  AR 12.

The ALJ determined that Plaintiff had the severe impairments of depressive disorder and back pain.  AR 14.  Despite these impairments, Plaintiff retained the RFC to lift and carry 50 pounds occasionally, 25 pounds frequently, and sit, stand and walk for six hours.  She could

occasionally stoop, crouch and crawl and could understand, remember and carry out simple one or two step job instructions.  AR 16.  Based on the testimony of the VE, the ALJ determined that Plaintiff could perform a significant number of jobs in the national economy.  AR 19.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).  Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (depressive disorder and back pain) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant work; but (5) can perform a significant number of jobs in the national economy. AR 12-19.

Here, Plaintiff argues that the ALJ failed to give controlling weight to the opinions of Dr. Mouanoutoua.

## DISCUSSION

Plaintiff argues that the ALJ should have given controlling weight to Dr. Mouanoutoua's opinions, which she characterizes as uncontroverted by any other examining or treating source.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995).  Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830.  Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record.  *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)).  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  *Magallanes  v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989).  The ALJ must do more than offer his conclusions.  He must set forth his own

interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988). Therefore, a treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record. *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007).

In *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion an examining physician over that of a treating physician. "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not "'substantial evidence.'" *Orn,* 495 F.3d at 632; *Murray*, 722 F.2d at 501-502. "By contrast, when an examining physician provides 'independent clinical findings that differ from the findings of the treating physicians, such findings are 'substantial evidence.'" *Orn*, 496 F.3d at 632; *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.1985). Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, *see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1985), or (2) findings based on objective medical tests that the treating physician has not herself considered, *see Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

If a treating physician's opinion is not giving controlling weight because it is not well supported or because it is inconsistent with other substantial evidence in the record, the ALJ is instructed by Section 404.1527(d)(2) to consider the factors listed in Section 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. 404.1527(d)(2)(i)-(ii). Other factors include the supportablility of the opinion, consistency with the record as a whole, the specialization of the physician, and the extent to which the physician is familiar with disability programs and evidentiary requirements. 20 C.F.R. § 404.1527(d)(3)-(6). Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference." SSR 96-2p; *Orn, 495 F.3d at 632-633*. "In many cases, a treating source's medical

opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p; *Orn*, 495 F.3d at 633.

Here, Dr. Mouanoutoua provided three opinions, ranging from October 2005 through March 2008, that would essentially preclude Plaintiff from working. AR 44, 203-204, 209-212, 290-291. The only other opinion, which the ALJ ultimately adopted, was from State Agency physician Hood. AR 220-222.

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer v. Sullivan,* 908 F.2d 502, 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *See eg.*, *Magallanes,* 881 F.2d at 751-55; *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians...." *Magallanes*, 881 F.2d at 752 (emphasis in original). Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.

As in *Magallanes*, the ALJ did not rely solely on Dr. Hood's opinion to reject those of Plaintiff's treating physician. After setting forth and considering the evidence, the ALJ found that Dr. Mouanoutoua's conclusions "are based on Ms. Yang's subjective complaints, about which I am skeptical." AR 18. Indeed, although Dr. Mouanoutoua performed mental status examinations, most of his extreme limitations were based mainly on Plaintiff's reports. For example, Dr. Mouanoutoua's belief that Plaintiff's ability to perform simple, repetitive tasks is "fair" is based mainly on Plaintiff's report that her husband has to remind her to perform simple chores or self-care. AR 203, 205, 208, 290-291. Similarly, in rating Plaintiff's other limitations, he relies largely on her statements that she is preoccupied with her physical condition (of which

1  there was little objective evidence), suffers excessive stress, has a low stress tolerance, is easily

2  angered and avoids large crowds.  AR 203-205, 208-209, 290-291.  Where an opinion is based to

3  a large extent on a claimant's own accounts of symptoms and limitations, it may be disregarded

4  where those complaints have been properly disregarded.  _Morgan v. Comm'r of Soc. Sec. Admin._,

5  169 F.3d 595, 602 (9th Cir. 1999)     Plaintiff does not challenge the ALJ's adverse credibility

6  finding.

7          As further support, the ALJ explained that Judge Birge found that Plaintiff's "testimony

8  at the previous hearing on her third application was inconsistent with the previous statements,

9  and in that testimony, Ms. Yang claimed to be much more severely limited than she had in the

10  previous inconsistent statements."  AR 18.

11          The ALJ also determined that there was no evidence to support a worsening of her

12  symptoms since Judge Birge's August 2004 decision.  AR 18.  He correctly noted that Plaintiff's

13  complaints of depression pre-dated Judge Birge's August 2004 decision.  AR 18.  In her current

14  application, she alleges an onset date of 2002, which was well before Judge Birge's prior

15  determination.  Other than Plaintiff's own testimony and her self-reports to Dr. Mouanoutoua,

16  there is no objective evidence that Plaintiff's symptoms have changed from 2004.  The ALJ

17  further noted that the absence of any supporting evidence for Plaintiff's persistent physical

18  complaints is "consistent with exaggeration of psychological symptoms as well."  AR 18.  _See_

19  _Sample v. Schweiker_, 694 F.2d 639, 642 (9th Cir. 1982) (an ALJ is entitled to draw inferences

20  logically flowing from the evidence).

21          Finally, the ALJ explained that numerous notations in the record indicated that Plaintiff's

22  depression was stable.  AR 18.  Indeed, during the most recent examination in February 2008,

23  Plaintiff reported that Effexor was helping her depression.  AR 284.  Moreover, in August 2007,

24  after one year of treatment with Hmong Women's Family Focus, Plaintiff indicated that she had

25  learned how to reduce the intensity of some symptoms with coping skills and medication.  AR

26  269-271.

27          The ALJ's decision to reject Dr. Mouanoutoua's opinion was supported by substantial

28  evidence and free of legal error.  The validity of the analysis further supports the ALJ's finding

1  that Plaintiff had not carried her burden of demonstrating changed circumstances to overcome the

2  presumption of continuing non-disability.[3]  _Chavez v. Bowen_, 844 F.3d 691, 693 (9th Cir. 1988);

3  s context.

### CONCLUSION

4

5        Based on the foregoing, the Court finds that the ALJ's decision is supported by

6  substantial evidence in the record as a whole and is based on proper legal standards.

7  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

8  Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in

9  favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff,

10  Mee Yang.

11

12       IT IS SO ORDERED.

13       **Dated:**   **June 18, 2010**          **/s/ Dennis L. Beck**
                                UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27      [3]  There was no change in Plaintiff's age status or in the criteria for determining disability.  Moreover, although Plaintiff alleged a hand impairment, there was little evidence in the record of such an impairment, as the ALJ properly noted, and she does not dispute this finding.  AR 14-15.  This leaves the ALJ to determine whether Plaintiff demonstrated an increase in the severity of an impairment.  AR 12.

28